THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RALPH TRASK, Defendant-Appellant.

Second District   No. 2—86—0980

Opinion filed April 4, 1988.

Michael D. Ettinger and Barry S. Pechter, both of Ettinger & Pechter, Ltd., of Oak Lawn (Kim A. Grannan, of counsel), for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Ralph Trask, was charged by information in the circuit court of Du Page County with unlawful possession of a controlled substance (cocaine) with intent to deliver, possession of cannabis with intent to deliver, and unlawful use of weapons. After a jury trial, he was found guilty of possession of a controlled substance over 30 grams with intent to deliver, possession of a controlled substance over 30 grams, possession of a controlled substance less than 30 grams with intent to deliver, possession of a controlled substance less than 30 grams, possession of cannabis with intent to deliver, possession of cannabis, and unlawful use of weapons. He was sentenced to a term of imprisonment of eight years in the Department of Corrections for possession of a controlled substance over 30 grams with intent to deliver, and concurrent three-year terms for possession of cannabis with intent to deliver and unlawful use of weapons.

On appeal, defendant contends that his arrest should have been

quashed and evidence suppressed due to the manner in which his arrest was effectuated, that he was not proved guilty beyond a reasonable doubt of possession of more than 30 grams of cocaine with intent to deliver or of possessing the shotgun which was the basis of the unlawful use of weapons conviction, and that the jury's verdicts were inconsistent. He also argues that he was deprived of a fair trial by the State's offer to stipulate to certain evidence in the presence of the jury and by improper closing argument. We affirm.

On January 13, 1984, Chicago and Burr Ridge police officers executed a search warrant for cocaine and documents of residency at a farmhouse at 6109 Grant Street in Burr Ridge. Seized were several weapons, including a shotgun with a barrel less than 18 inches long, quantities of cocaine and marijuana, currency, utility bills in defendant's name, and drug paraphernalia. Defendant was arrested and charged with the offenses listed above.

Before trial, defendant filed a motion to quash his arrest and to suppress the evidence seized based on the way in which the police executed the search warrant. A hearing was held, after which the trial court denied the motion. Since defendant renews his argument here that his motion should have been granted, we set forth first the evidence adduced at the hearing on the motion to suppress.

Defendant testified first at the hearing. At about 10 a.m. that morning, he was in an upstairs bedroom of the farmhouse with his fiancee, Leslie Larson, when he received a phone call from Burke's Security. As a result of the call, he expected someone to arrive within 30 minutes.

At about 10:30 a.m., he was nude in bed with Larson when he heard a "large, loud crash" followed by a second crash. Defendant ran to the front bedroom window and saw several people outside. He returned to the bedroom from which he had come and right away the police were there. Defendant testified that he heard no knocking or any announcement by the police. He also testified he had heard people knock on the door before from the bedroom and that if someone had knocked on the door, it would have only taken 10 to 15 seconds for him to put on his robe and answer it.

Following defendant's testimony, several police officers involved in the search testified. Officer Lash of the Chicago police department testified that Sergeant Cline and Officer Marino went up to the front door of the farmhouse. Lash took up a position to the right of the front door on the side of the building. Lash heard knocking and then Cline announcing "Police officers, we have a search warrant, open the door." There was another series of very loud knocks after which Cline

made the same announcement. Lash estimated that about six seconds elapsed between the first knock and the second announcement. Lash heard some noise coming from the upstairs, then Cline said, "[B]reak in the door." Lash learned from Cline and Marino that after they broke in the first door with a sledgehammer, a second inner door could not be forced open, so they gained entry by breaking in a window next to the door. Lash estimated that it was 45 seconds from the first knock until entry was made.

Next to testify was Officer Phillips of the Burr Ridge police department. He was positioned 50 feet from the front door, towards the side and back of the house. He heard knocking followed by an announcement. Although he first indicated that he did not recall what was actually announced, he later said he heard, "This is the police, open up." Approximately 20 or 30 seconds after the announcement, he heard the smashing of the door. His testimony as to the method of entry corroborated Lash's, and he estimated that it was about a minute from the knock and announcement until entry was made.

Chicago police officer Phillip Pariso testified that he and Sergeant Cline went up to the front door. Cline knocked and announced they were police officers and said, "Open the door." Cline waited a few seconds without response. He knocked and announced again and then instructed Pariso to break in the door. Pariso's description of the entry was similar to that of Lash and Phillips. Pariso guessed that it was about 30 seconds from the first knock until he first used the sledgehammer, or about 20 seconds after the second knock. He estimated that it was 45 seconds to one minute from the time he began to break the door until entry was made. Pariso went upstairs, where he found defendant and Larson completely undressed in a bedroom.

Officer Pariso also testified that he was a member of a team that arrested defendant on September 30, 1983. At that time, defendant was searched, and a loaded semiautomatic pistol was taken from his person. Pariso did not know if that gun had been returned to defendant or if defendant had any other weapons.

It also came to light during Pariso's testimony that the prosecutor had given a transcript of Officer Lash's testimony to Officer Marino, who had given the transcript to Pariso. Pariso had reviewed Lash's testimony before testifying, in violation of a prior motion to exclude witnesses, although Pariso was not aware of the exclusion order. Defendant's motion to strike Pariso's testimony was denied, although the trial judge stated he would take the procedure into consideration when deciding what weight to give to the testimony.

The final witness of the suppression hearing was Leslie Larson.

She had been charged with the same Class X offense as had defendant, but the charges against her were dismissed in exchange for her testimony against defendant. She testified that she and defendant were in an upstairs bedroom when there was a loud knocking on the door which lasted at most a few minutes, which they ignored. The knocking then changed to pounding, and defendant got up to see who it was. Defendant told her the police were there, and then there was a crash and a bang and sounds of footsteps coming upstairs. Larson also testified that about 45 minutes before the police arrived, she and defendant had free-based cocaine.

The final evidence was by way of stipulation. Chicago police officer Marino testified at the preliminary hearing that "upon arrival, [he] knocked at the front door and did not get an answer, at which time forcible entry was made in the front door."

The trial court then made the following finding:

"On January 13, 1984, certain law enforcement officers went to a large two floor wood farmhouse with four bedrooms on the second floor, located at 6109 Grant, in Burr Ridge, Du Page County, Illinois.

The law enforcement officers had with them a search warrant issued January 12, 1984, and the sufficiency of the search warrant will be covered separately. Law officers covered the farmhouse with certain law enforcement officers approaching the front door, and one of them had a sledge hammer.

After knocking and announcing the purpose of being at the address, 6109 Grant Street, Burr Ridge, Illinois, and getting no response, the sledge hammer was used on the outer door. Law enforcement officers, after breaking past the first door, were faced with a second door. Rather than break through the second door, because it opened inward, a first floor window was chosen to be broken, and entry was made.

It should be noted at this time that the law enforcement officers, according to the testimony, were familiar with the defendant, having arrested him on a prior date, and he was, at that time, in possession of a weapon. Therefore, the law enforcers, having a search warrant for search and seizure of certain controlled substances, and had had a prior dealing with the defendant, when he had a weapon, entered the residence of the defendant.

The Court notes at this time that all answers of the law enforcers regarding knock and announcement and use of force were approximations. By that I mean no one had a stopwatch.

There was some gap in knocking and entering. This gap varied with the witnesses, but nevertheless, the Court finds that a reasonable time elapsed, considering the circumstances.

The Court finds that there was a knock, announcement and reasonable wait before force was used to enter the dwelling. The Court further finds that an exigent situation has presented itself to the law enforcers, and they acted within the legal requirements.

It is the ruling of the Court that the motion to suppress be denied."

At trial, Officer Pariso again testified. He found defendant and Larson nude in a second-floor bedroom and recovered $1,227 in currency from defendant's pants pocket. Pariso also searched the basement and found a clear plastic bag of white powder between the joists and the wall. There was no debris or dust on the bag. It was stipulated that the bag contained 268 grams of cocaine.

Chicago police officer John Wheaton testified that his role in the execution of the search warrant was to secure the first floor. He recovered a clear plastic bag of tan powder on a chair in the kitchen, a clear plastic bag of white powder in the living room, and three clear plastic bags of green crushed plant from the kitchen. It was stipulated that none of the bags contained a controlled substance. Officer Wheaton also recovered a .22 caliber revolver from the living room closet.

Officer Lash testified that he recovered two triple-beam scales from the front upstairs bedroom and a duffel bag containing zip-lock bags, a burner, ether and other paraphernalia suitable for free-basing cocaine. He also seized a canvas bag containing miscellaneous ammunition, including shotgun shells. He also found a .38 caliber pistol. Furthermore, he found a plastic bag of white powder and some crushed green plant material in the same bedroom. It was stipulated that the bag of white powder contained 20.53 grams of cocaine and that the plant material contained cannabis. Lash also recovered a plastic bag of tan powder from a utility room which did not contain a controlled substance.

Lash also saw Officer Thomas Martin recover a shotgun from a hole in the wall. The shotgun was unloaded. Lash testified that the shotgun was an older model which had some rust and pitting in the barrels.

Officer Cline testified that he recovered a firearm owner's identification card in defendant's name which listed his address as that of the farmhouse. He also found a telephone bill to defendant dated No-

vember 21, 1983, indicating that service would be disconnected unless payment was made, a gas bill also indicating arrearage in payment, and a bank statement addressed to defendant at the farmhouse, indicating a balance of $2,100.

Cline also identified the shotgun taken from the wall. It had a barrel length of 10 inches. He stated that it was in operating condition and that there were traces of gunpowder in the barrels when it was recovered, indicating that it had been fired in the past. Cline further testified that the value of the cocaine found in the basement was $47,000 and that the total amount of cocaine found was worth $48,000. He estimated that the street value of the cannabis was about $500. He also testified that the powders which tested negative for cocaine were suitable for use in cutting or diluting cocaine.

Officer Thomas Martin testified that he recovered a plastic garbage bag of green leafy material from the closet of an upstairs bedroom. It was stipulated that the substance tested positive for cannabis and weighed 263 grams. He also testified to recovering the shotgun from a hole in the wall of the front bedroom. The hole looked like it had been kicked or punched in, and Martin simply reached in, felt around, and pulled out the gun.

Defendant testified in his own behalf. He initially rented the farmhouse in December 1979 and moved in with his wife and two children. His family moved out in June 1983, and a friend later moved in with her four children. They stayed about five weeks.

Defendant told the jury how he first came to use cocaine. He testified that he met a man named Gary Stuey in a record store when Stuey was buying drug paraphernalia. Stuey showed defendant how to use it, and they became friends. In late July 1983, defendant moved into Stuey's home in Oak Brook; the farmhouse was then empty. Defendant lived at Stuey's house until December 1983 when he moved back to the farmhouse. At Stuey's, defendant met Leslie Larson, who also moved into Stuey's house. Defendant also met a man named Armando Castro there. Castro lived at the farmhouse from mid-September to early December 1983. From December 1983 to January 13, 1984, Castro would stay overnight at the farmhouse once a week or every 10 days.

In December 1983, Larson moved into the farmhouse with defendant. After three weeks, they became engaged. They were using cocaine on a regular basis. Defendant testified that the duffel bag of paraphernalia was Larson's. Larson, Castro and defendant used the items in the bag to smoke cocaine. Defendant had only seen one of the scales and would use it to make sure the cocaine he bought was

the correct weight. He denied ever seeing the shotgun found in the wall or the large bag of cocaine found in the basement. He admitted that the marijuana was his and that the smaller bag of cocaine was his and Larson's. He did not intend to sell it, but he did intend to smoke it. He testified that Larson had paid for that cocaine by selling some of it to a friend. He also explained that he was a vegetarian and that the bags of powder were different types of flour.

Defendant stated that there was an outside entrance to the basement which could not be locked and that Castro had a key to the farmhouse from July 1983 to January 1984. He also testified that he was repairing for friends some of the 11 weapons recovered. As noted above, defendant was found guilty on all charges.

■ Defendant's first argument is that the trial court erred in denying the motion to suppress because the police, in executing the search warrant, failed to announce their authority and purpose and did not give defendant sufficient time to respond before forcing their way into the farmhouse. It is generally true that, absent exigent circumstances, police officers executing a search warrant are expected to knock and announce their authority and purpose before entering the premises to be searched. (*People v. Boykin* (1978), 65 Ill. App. 3d 738, 740-41.) Where exigent circumstances exist, however, "the failure of police to knock and to announce their authority and purpose in the execution of a search warrant for narcotics does not violate the fourth amendment right against unreasonable searches and seizures." (*People v. Ouellette* (1979), 78 Ill. 2d 511, 516.) Such exigent circumstances may exist where there is a possibility of destruction of evidence or where there is danger to the officers. *People v. Seybold* (1981), 98 Ill. App. 3d 236, 239-40.

■ ■ The trial court here found that there was a knock, announcement, and a reasonable wait before force was used to enter the dwelling. The court further found that an exigent situation was presented to the officers and that they acted within the requirements of the law. In challenging these findings, defendant initially argues that the police did not "knock and announce" at all. At the hearing on the motion to suppress, however, Officers Phillips, Lash and Pariso all testified that the officers at the front door knocked and announced their office and purpose before entry was made. Leslie Larson also testified that she heard knocking before the police entered, but that she and defendant ignored it until it turned to pounding. Defendant was the only witness to testify to the contrary. The trial court, of course, was not required to believe defendant's testimony over that of the officers and Larson. It is the function of the trier of fact to deter-

mine the credibility of the witnesses and the weight to be given to their testimony; where the evidence is merely conflicting, a court of review will not substitute its judgment for that of the trier of fact. (*People v. Foster* (1979), 76 Ill. 2d 365, 373.) Moreover, a trial court's ruling on a motion to suppress will not be set aside unless it is clearly erroneous. (*People v. Clark* (1982), 92 Ill. 2d 96, 99.) The court's finding here that the police did knock and announce, supported as it is by the testimony of all witnesses but defendant, does not appear erroneous.

A somewhat closer question is presented as to whether defendant was given sufficient time to respond. Implied in the general knock and announce rule is the assumption that a person within will be given sufficient time to respond before forcible entry is made. (*Boykin*, 65 Ill. App. 3d at 741; see also *People v. Marinez* (1987), 160 Ill. App. 3d 349, 353.) There is, however, no rigid rule establishing what is a reasonable time for officers to wait after announcing their presence and purpose. (*Boykin*, 65 Ill. App. 3d at 741.) All of the surrounding facts and circumstances of a given case should be considered in determining if the wait is reasonable. (*Boykin*, 65 Ill. App. 3d at 740, citing *Ker v. California* (1963), 374 U.S. 23, 33, 10 L. Ed. 2d 726, 737, 83 S. Ct. 1623, 1629-30.) The presence of exigent circumstances should be considered and "is as important and relevant to the question of the amount of time an officer ought to wait prior to entering forcibly as it is to the question of whether he needs to even announce his authority and purpose prior to the entry." *Boykin*, 65 Ill. App. 3d at 741.

Defendant argues that the police did not wait long enough before attempting entry because there were no exigent circumstances here. The trial court, however, after finding that the police waited a reasonable time, also found that an exigency existed. This was apparently based on Officer Pariso's testimony that 3½ months earlier, he had arrested defendant and that defendant had had a loaded, semiautomatic pistol on his person. Defendant contends that this fact was insufficient to justify the finding of exigent circumstances, relying on *People v. Ouellette* (1979), 78 Ill. 2d 511, and *People v. Clark* (1986), 144 Ill. App. 3d 7. Although the State responds that those cases are inapplicable because in neither case did the police knock at all, the discussion of whether exigencies existed is also relevant to the wait required before entry. *Boykin*, 65 Ill. App. 3d at 741.

In *Ouellette*, one police officer testified "that on two occasions, 1½ and 2 years before execution of the search warrant, he had personal knowledge of [the defendant's] possession of a handgun and a

pistol box respectively." (*Ouellette*, 78 Ill. 2d at 520.) Although it was urged there that such circumstances created an exigency excusing compliance with the announcement requirement, the court disagreed, holding that an exigency excusing compliance with the announcement requirement arises " 'only where the officers reasonably believe the weapon will be used against them if they proceed with the ordinary announcements.' " (*Ouellette*, 78 Ill. 2d at 520, quoting *People v. Dumas* (1973), 9 Cal. 3d 871, 878, 512 P.2d 1208, 1213, 109 Cal. Rptr. 304, 309.) The court found no likelihood to use weapons was demonstrated by the earlier police contacts because, among other things, no evidence was offered to show that the weapon was loaded or concealed. The court also relied on police reports, which indicated that forced entry was made because of the quantity and nature of the controlled substance rather than because of the presence of firearms. (*Ouellette*, 78 Ill. 2d at 521.) Similarly, in *Clark*, the court found that no exigency existed to necessitate an unannounced forced entry where, "[a]lthough the police had some sketchy information that defendant had a gun or guns on the premises, there was no reason to believe that he had ever used the gun or that he usually carried it on or about his person." *Clark*, 144 Ill. App. 3d at 11.

An obvious difference between the above cases and this case is that in neither of those cases had the defendant recently been found to be carrying a concealed, loaded pistol. Both the *Ouellette* and *Clark* courts specifically noted this factor in finding no exigency. (*Ouellette*, 78 Ill. 2d at 521; *Clark*, 144 Ill. App. 3d at 11.) Although Officer Pariso did not know whether defendant had any other guns, any apprehension that defendant might be armed and dangerous would appear reasonable in light of the previous encounter. The police should not have to be certain that they will be shot at if they wait very long before entering; they just have to have a reasonable apprehension of danger. The trial court's finding of exigent circumstances was thus not erroneous.

Even if the court's reliance on defendant's prior possession of a concealed firearm was improper, the remainder of the circumstances support the action of the police. The State notes that a wait of 10 seconds before forcible entry was held reasonable in *Boykin*. Like this case, the police there were executing a search warrant for narcotics. The police announced their presence and knocked twice, but upon hearing scuffling noises inside, they entered the building. Under those circumstances, the court found it reasonable for the police to conclude that persons inside were either arming themselves or attempting to destroy incriminating evidence. (*Boykin*, 65 Ill. App. 3d at 741.) The

court noted that in those circumstances, a matter of a few seconds could be crucial and that under the exigencies of the moment, the entry was reasonable. *Boykin*, 65 Ill. App. 3d at 741.

In this case, as in *Boykin*, the trial court's finding that the police acted reasonably does not appear manifestly erroneous. While the police did not wait a particularly long time before forcing entry, they were executing a search warrant for evidence which could be easily destroyed. Although there is no blanket rule allowing police to immediately enter in all narcotics cases (*Ouellette*, 78 Ill. 2d at 519), the ease with which evidence may be destroyed is a relevant factor in deciding what is reasonable (*Ouellette*, 78 Ill. 2d at 518). This fact, coupled with the police awareness that defendant had recently been arrested carrying a loaded weapon, supports the trial court's finding.

■ Before leaving this area of inquiry, we briefly address defendant's argument that the trial court erred in permitting Officer Pariso to testify when it became known that Pariso had reviewed a transcript of Officer Lash's testimony in violation of an order excluding witnesses. Whether a witness who has violated an exclusion order should be permitted to testify, or whether the testimony should be stricken, is within the discretion of the trial court, whose determination will not be disturbed on appeal absent a clear abuse of discretion. (*People v. Wiatr* (1983), 119 Ill. App. 3d 468, 473.) "The dominant inquiry is whether the exclusion or inclusion of the testimony would prejudice the affected party." *Wiatr*, 119 Ill. App. 3d at 474.

In this case, it does not appear that defendant was unduly prejudiced by the violation of the exclusion order. Pariso's testimony, while essentially corroborating Lash's, was not identical as to the time estimates. Moreover, Pariso's important testimony describing his prior arrest of defendant was in no way affected by familiarity with Lash's testimony. Even disregarding Pariso's other testimony about the entry to the farmhouse, there was enough testimony from Officers Phillips and Lash, as well as from Leslie Larson, for the court to conclude that the entry was reasonable. It should also be noted that the trial court was aware of the violation and took it into consideration in making its determination. We conclude that the trial court's ruling on the motion to suppress was correct.

■ Defendant next argues that the State failed to prove beyond a reasonable doubt that he knowingly possessed more than 30 grams of a controlled substance with intent to deliver. As previously noted, while only 20 grams of cocaine were found in defendant's bedroom, a bag containing 268 grams of cocaine was found concealed between the joists and the wall of the basement ceiling. It is the larger bag that

defendant contends he did not possess.

To prove the defendant guilty of possession, the State must prove knowledge on the part of defendant of the presence of the controlled substance and that the substance was in the immediate and exclusive control of defendant. (*People v. Nettles* (1961), 23 Ill. 2d 306, 307.) Where a controlled substance is found on premises under the control of a defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by defendant which may be sufficient to sustain a conviction for unlawful possession of a controlled substance, absent other facts and circumstances which might leave a reasonable doubt as to guilt in the minds of the jury. (*Nettles*, 23 Ill. 2d at 308-09; *People v. David* (1986), 141 Ill. App. 3d 243, 257-58.) The questions of knowledge and possession are decisions for the jury, whose findings will not be disturbed on review unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of guilt. (*People v. Stamps* (1982), 108 Ill. App. 3d 280, 292-93.) No such doubt arises here.

Defendant's control of the premises was clearly shown. Aside from defendant's own admission that he had rented the farmhouse for several years, gas and telephone bills addressed to defendant at the farmhouse were introduced into evidence. Defendant contends, however, that since both Leslie Larson and the mysterious Armando also had access to the basement, and because there was an outside entrance to the basement, the jury's finding is so palpably contrary to the evidence as to raise a reasonable doubt of his guilt.

We do not find this argument particularly convincing. As the State notes, it seems highly unlikely that someone else would leave almost $47,000 worth of cocaine in defendant's basement. Moreover, the requirement of exclusive control of the premises by defendant does not allow him to defeat prosecution simply by a showing of joint control. (*Stamps*, 108 Ill. App. 3d at 293.) When presented with a similar argument, this court stated that "[w]hile defendant did present evidence that others had access to the [premises], this fact alone does not require a reversal of the jury's verdict. Mere access by others is insufficient to defeat a charge of constructive possession." *David*, 141 Ill. App. 3d at 258; see also, *People v. Bell* (1972), 53 Ill. 2d 122, 126.

The other facts and circumstances which defendant claims raise a reasonable doubt as to his guilt are likewise unconvincing. Although he notes that the bag was concealed in a place where he could not see it, the very nature of the word "conceal" implies that the bag would not be openly visible. The jury could easily have concluded that it was defendant who hid the bag. While defendant did not attempt to de-

stroy the cocaine in the basement when the police arrived, he clearly would not have had the chance to do so without giving away its location. The fact that no fingerprints were found on the bag, as well as the other circumstances defendant points to, were all factors for the jury's consideration and do not of themselves make the verdict appear palpably erroneous.

■ Defendant further contends, however, that even if he knowingly possessed more than 30 grams of a controlled substance, he did not possess it with the intent to deliver. This contention is even less convincing than his possession argument given the large quantity of cocaine seized, the number of weapons in the house, the $1,200 found in defendant's pocket, the scales and other drug paraphernalia found in defendant's bedroom, and the presence of material suitable for cutting the cocaine for further distribution. The quantity of cocaine alone is circumstantial evidence from which the jury could properly conclude that it was not intended for personal use but was possessed with the intent to deliver. (*Stamps*, 108 Ill. App. 3d at 295.) Although defendant testified that he did not intend to deliver the cocaine, the credibility of his explanation was for the jury to decide. (*Nettles*, 23 Ill. 2d at 309.) The jury's determination on this issue was not unreasonable.

■ Defendant next argues that the State failed to prove that he knowingly possessed the sawed-off shotgun which was the basis for the unlawful use of weapons charge. His argument here is similar to his argument regarding the larger bag of cocaine, and similar considerations are applicable. On this charge, too, we find that defendant was proved guilty beyond a reasonable doubt.

To sustain this conviction, the State must have proved that defendant knowingly possessed the weapon. (Ill. Rev. Stat. 1983, ch. 38, par. 24—1(a)(7).) "To apply the doctrine of constructive possession of such a weapon the evidence must show that the defendant had immediate and exclusive control over the area where the weapon was found and must be such that his knowledge of the presence of the shotgun may be inferred." (*People v. Givens* (1977), 46 Ill. App. 3d 1035, 1041.) The weapon in question here was found in a hole in the wall of one of the upstairs bedrooms of defendant's residence. His control of the premises has already been discussed. Defendant argues, however, that the circumstances indicate that he did not know the shotgun was there.

Defendant notes that Sergeant Cline testified the gun was "probably 20 years old and that Officer Lash testified that the gun had not been fired for at least 2½ years. The age of the gun does not seem particularly relevant, especially since the gun was in working order.

Moreover, although defendant claims that the gun must have been in the hole a long time according to Lash's testimony, it is clear that when Lash said he was sure the gun had not been fired in 2½ years, he was referring to the time between defendant's arrest and the time of trial.

The facts that the gun was not visible to defendant and that defendant did not move towards the gun when arrested are insignificant. As with the large bag of cocaine, it appears defendant was concealing the shotgun, so obviously he could not see it. That was the point of concealing it. It also seems that any attempt to retrieve the gun before his arrest would have been futile since it was not loaded. The jury's determination that defendant knowingly possessed the shotgun is therefore not contrary to the manifest weight of the evidence.

■■ ■ Defendant next argues that certain of the jury's verdicts were legally and logically inconsistent. Specifically, he argues that the jury could not consistently find him guilty of possessing more than 30 grams of a controlled substance while at the same time finding him guilty of possessing less than 30 grams. He also argues that the mental state required to sustain the three convictions of possession with intent to deliver is inconsistent with that for mere possession.

Defendant's second contention is clearly without merit. The case on which he relies for this argument, *People v. Hoffer* (1985), 106 Ill. 2d 186, held that convictions for murder, voluntary manslaughter and involuntary manslaughter based on the same act were legally inconsistent because the mental states required for the three offenses are mutually exclusive. (*Hoffer*, 106 Ill. 2d at 195.) The mental states required for possession and possession with intent to deliver, however, are in no way mutually exclusive. For both offenses, it must be proved that the defendant knowingly possessed the substance. The greater offense merely adds the requirement that, in addition to knowing possession, the defendant also intended to deliver. Since the mental states required are not mutually exclusive, the guilty verdicts on the simple possession counts are not inconsistent with the guilty verdicts on the charges of possession with intent to deliver.

Defendant's main contention is that for the jury to find that he possessed less than 30 grams would necessarily imply that he did not possess more than 30 grams and vice versa. Although there is some initial appeal to this argument, a closer examination of the record reveals that the verdicts are consistent. Initially, it should be noted that if defendant possessed more than 30 grams of a substance, he necessarily possessed less than 30 grams. An inconsistency would only be

presented if the jury were to find that defendant possessed more than 30 grams, but was not guilty of possessing less than 30 grams. Verdicts are legally inconsistent where they necessarily involve a conclusion that the same essential elements of each offense were found both to exist and not to exist. (*Hoffer*, 106 Ill. 2d at 194-95.) Such a conclusion is not evident here. The jurors were also instructed that possession of less than 30 grams was an included offense of possession of more than 30 grams and were provided with guilty and not guilty verdict forms for each offense. Since the jury found that defendant possessed the greater amount, it is difficult to see how they could have consistently found defendant not guilty of possessing the lesser amount. Defendant has thus not shown that the verdicts are legally inconsistent.

■■■ Defendant next argues that the State improperly offered to stipulate in the presence of the jury that no fingerprints were found on the bag of cocaine found in the basement. During defendant's cross-examination of Officer Pariso, the following colloquy took place:

"[Defense Counsel]: This black bag, if I can describe it as that, was the bag that this white powder in a plastic bag was in?

A. It was not black on the day.

Q. It was perfectly clear?

A. Yes.

Q. So, in other words, this was submitted to the crime lab?

A. Yes.

Q. Okay, and this black powder on it was used to take fingerprints?

A. That is correct.

Q. Okay.

MR. BIRKETT: For the record, I would stipulate that this item was submitted for prints and it came back negative for any prints, and that is what the black powder is.

MR. ETTINGER: Fine."

Defense counsel then proceeded with his cross-examination of Officer Pariso.

Although it may have been improper for the prosecutor to offer to stipulate as he did, reversal is not thereby required. To begin with, defense counsel apparently accepted the stipulation when he replied "Fine" to the offer. (See, *e.g.*, *People v. Orr* (1984), 127 Ill. App. 3d 823, 828 ("By agreeing with the *** evidence presented by the State, the defendant thus stipulated to that evidence"). Defendant should not now be heard to complain of the offer of stipulation which he ac-

cepted without objection.

Even if defendant did not waive this issue by failing to object at trial, we do not believe that reversible error occurred. As was stated by the court in *People v. Burdine* (1978), 57 Ill. App. 3d 677, *appeal allowed with order* (1978), 71 Ill. 2d 610:

> "It is error to offer to stipulate in the jury's presence to the admission of documents otherwise inadmissible, or which might be prejudicial to the opposing party, because his counsel is unfairly put in the position of either offering the documents or suffering the adverse inference that he is hiding evidence. [Citation.] However, while an offer to stipulate to the admission of such a document is to be condemned [citations], such conduct does not constitute reversible error absent resulting prejudice [citation]." *Burdine*, 57 Ill. App. 3d at 685.

In *Burdine*, the evidence to which the prosecution offered to stipulate consisted of three police reports which were clearly inadmissible. (*Burdine*, 57 Ill. App. 3d at 685.) Likewise, in *People v. Hovanec* (1976), 40 Ill. App. 3d 15, it was held to be error where the evidence in question was a witness' inadmissible pretrial statement. (*Hovanec*, 40 Ill. App. 3d at 17.) The fingerprint analysis in the present case, in contrast, was not inadmissible, so the holdings of *Burdine* and *Hovanec* are not controlling.

Furthermore, even if defendant's cases are applicable, it does not appear that defendant was prejudiced by the offer to stipulate. The prejudice defendant claims is that the jury may have inferred that defendant was a drug dealer who made sure no prints were left on the bag. He also claims that the stipulation allowed the jury to believe that no one else's prints were on the bag, thus potentially exonerating Leslie Larson or "other possible persons who may have possessed the substance." Not only is this claimed prejudice highly speculative, it is not the type of prejudice which requires reversal. It is where the prosecution attempts to make it appear to the jury that a defendant is trying to keep unfavorable evidence from them that reversal is required. (*Hovanec*, 40 Ill. App. 3d at 18.) Moreover, it is almost inconceivable that defense counsel would not have gone on to inquire whether defendant's prints were on the bag, so the evidence stipulated to would most likely have been introduced anyway. In fact, during closing argument, defense counsel emphasized that defendant's prints were not on the bag.

■■■ Defendant also contends that the prosecutor improperly commented on the "stipulation" in closing argument. During the State's rebuttal argument, the following exchange took place:

"[Assistant State's Attorney]: There are no fingerprints, and you heard the stipulation during the course—

MR. ETTINGER: Objection, Judge, there is no stipulation.

THE COURT: The jury will recall what the evidence was.

MR. BIRKETT: Thank you. If I am mistaken, ladies and gentlemen, and I don't believe I am, but during the course of the officer's testimony, Officer Pariso, there was a stipulation that no prints were recovered. What is so unusual about that? There were no prints detected for comparison. So what? What he is trying to do is have you fall for a sham defense and argue to you nonevidence, evidence which does not exist."

Although defendant argues that this argument is similar to argument condemned in *Hovanec*, the remarks in that case were to the effect that the State had tried to give the jury evidence but had been blocked by defendant. (*Hovanec*, 40 Ill. App. 3d at 18.) Those remarks clearly implied that the defendant was trying to hide unfavorable evidence from the jury. Here, the prosecutor did not make such an implication. The comments were in response to the defendant's own argument that defendant's fingerprints were not on the bag and that if they had been there, the State would have so informed the jury. Since the prosecutor's remarks were invited by the defense argument, they were a permissible response. (See, *e.g.*, *People v. Visgar* (1983), 120 Ill. App. 3d 584, 595.) The complained-of argument thus did not result in reversible error.

■■■ Finally, defendant argues that he was denied a fair trial by the prosecutor's improper closing argument which implied that defendant had the burden of presenting evidence which would create a reasonable doubt of guilt. After reviewing the complained-of remarks, however, we do not find that they were so prejudicial as to require reversal.

It is well established that great latitude is afforded a prosecutor during closing argument and that the propriety of the prosecution's remarks is generally left to the discretion of the trial court, whose determination will be upheld absent a showing of abuse of discretion. (*People v. Morrison* (1985), 137 Ill. App. 3d 171, 184.) It is also equally well established that arguments which diminish the presumption of innocence are forbidden. (*People v. Harbold* (1984), 124 Ill. App. 3d 363, 371, citing *People v. Weinstein* (1966), 35 Ill. 2d 467.) In this case, the prosecutor, several times during rebuttal argument, referred to defendant's defense as a "sham" and also stated that defendant "had to come up with a sellable story."

The references to defendant's defense as a "sham" do not appear

to be error. Prosecutorial comments should be assessed in the context of the whole trial, and a reviewing court should sustain a conviction unless it appears that improper comment substantially prejudiced the defendant. (*Harbold*, 124 Ill. App. 3d at 371.) Here, the prosecutor was merely commenting on the unbelievability of defendant's testimony. In context, such a characterization does not seem prejudicial given the evidence against defendant.

The prosecutor's statement that defendant had "fallen miserably short of selling a sellable story" was improper in that the jury could have taken it as tending to shift the burden of proof to defendant. An objection to this remark, however, was immediately sustained, and the court told the jury to disregard the remark. The prosecutor then rephrased his argument, saying instead that the testimony was not believable. This case is thus unlike *Weinstein*, relied on by defendant, in that there the prosecution repeatedly told the jury that the defendant had the burden of creating a reasonable doubt of her guilt. (*Weinstein*, 35 Ill. 2d at 469.) Here, the prosecutor did not continue with comments which might have shifted the burden, but rather restated his argument in permissible terms. This, coupled with the court's admonishment, sufficiently dissipated any prejudice to defendant.

In summary, we hold that the police executed the search warrant in a reasonable manner, given the circumstances presented. The jury's findings that defendant possessed both the large bag of cocaine and the sawed-off shotgun are not contrary to the manifest weight of the evidence, nor are their verdicts inconsistent. While we do not condone the State's offer of stipulation and certain remarks made in closing argument, they did not deprive defendant of a fair trial.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

LINDBERG, P.J., and HOPF, J., concur.