751 N.E.2d 1236 (2001)
322 Ill. App.3d 892
256 Ill.Dec. 399
In re H.S.H., a Minor (The People of the State of Illinois, Petitioner-Appellant,
v.
H.S.H., Respondent-Appellee).
No. 2-00-0548.
Appellate Court of Illinois, Second District.
June 20, 2001.
*1238 Joseph E. Birkett, Du Page County State's Attorney, Margaret M. Healy, Assistant State's Attorney, Wheaton, Martin P. Moltz, Deputy Director, State's Attorneys Appellate Prosecutor, Elgin, Mary Ellen Dienes, Des Plaines, Karen Orton, Assistant State's Attorney, Wheaton, for the People.
Brian K. Stevens, Stevens & Associates, St. Charles, for H.S.H.
Justice RAPP delivered the opinion of the court:
The State filed a delinquency petition alleging that respondent, H.S.H., committed aggravated assault (720 ILCS 5/12-2(a)(1) (West 1998)), the unlawful use of weapons (720 ILCS 5/24-1(a)(10) (West 1998)), and the unlawful possession of firearms (720 ILCS 5/24-3.1(a)(1), (a)(2) (West 1998)). The trial court barred two State witnesses from testifying after a third State witness who already testified told them about some of his testimony. We reverse and remand.
When the bench trial commenced on October 28, 1999, respondent's attorney moved to exclude witnesses from the courtroom, and the State joined in the motion. The State's first witness was Carlos Garcia. Garcia testified that he did not know respondent before the incident giving rise to this cause occurred. During the afternoon of April 11, 1999, Garcia was with friends Ryan Smith and David Brugger. Garcia parked his car on the street near his home. As Garcia was removing items from his car, he saw five people, including respondent, walk past him and noticed that they were staring at him. Garcia was walking toward his home when he saw respondent flash gang signs. Garcia went to his front steps, put down the items he was carrying, and began to walk toward the group. Respondent retreated through an alley. The remaining individuals began "talking trash" to Garcia. One of them walked up to Garcia and used his chest to bump Garcia. As Garcia pushed that person, a second person shoved Garcia from behind. Garcia raised his fists to fight the second person, but that person did not engage Garcia.
Garcia then saw respondent holding a snow shovel, which Garcia identified in court. Garcia warned that he would kill respondent if respondent came any closer. Respondent dropped the shovel and ran away. Garcia then saw Smith arguing with the other individuals. Garcia watched the argument for a few minutes and then saw respondent standing in an alley and holding a gun. Respondent was about 15 to 20 feet from Garcia and was pointing the gun at him. Garcia did not think the gun was real, so he began to walk toward respondent. Respondent pointed the gun toward the ground, cocked it, and pointed it at Garcia again. Garcia stopped walking and challenged respondent to shoot him. Respondent appeared to be afraid and backed away somewhat. Respondent's companions urged him to withdraw. Garcia's companions pulled Garcia away, and Garcia walked away from respondent. Garcia went home and later told his family what happened. Garcia's sister called the police.
*1239 During cross-examination, respondent's attorney asked Garcia what gang he belonged to, and Garcia responded that he was not in a gang. Garcia testified that on the day of the incident he spoke to police officers. Also, Garcia testified that he spoke to Officer Mark Whaley the day after the incident. Respondent's attorney questioned Garcia extensively about what Garcia did after the incident and what he told the police. Respondent's attorney also asked about the gun and how Garcia knew that it was real.
Garcia finished testifying, and the court ordered a short recess. When the trial resumed, respondent's attorney informed the court that a witness observed Garcia walk out of the courtroom and speak with the State's two remaining witnesses. Respondent's attorney requested that the court sanction the State by barring the testimony of the remaining witnesses. The prosecuting attorney asserted that a hearing would be necessary before the court could impose sanctions. The following exchange occurred:
"[Prosecuting Attorney]: * * * I don't think sanctions would be appropriate. I don't believe those witnesses were advised * * * of the motion to exclude. I am sorry, I did not do that.
THE COURT: I am sorry, I didn't admonish them. I didn't know who was out there."
After another short recess, the prosecuting attorney stated that she did not agree with the allegations of respondent's attorney and related Officer Whaley's version of the alleged incident. The following exchange occurred:
"THE COURT: Was [Garcia] admonished by your office not to discuss his testimony * * *?
[Prosecuting Attorney]: I didn't, and I apologize for that. * * * I did tell the witnesses they could not be present in the room when they were testifying, but I did not talk to them in more detail about the fact that they could not."
The trial court stated that it would bar the remaining witnesses from testifying. The State requested a short continuance to consider whether it would appeal and to make an offer of proof regarding what occurred outside the courtroom. The court stated that an offer of proof was not necessary but granted a continuance.
On November 19, 1999, the State moved for reconsideration. On January 19, 2000, the trial court agreed with the State that a hearing was necessary to determine whether a violation of the court's order excluding witnesses occurred and, if so, whether the violation prejudiced respondent.
During the March 21, 2000, hearing, respondent called his mother, P.H. She testified that, during the trial, she sat in the lobby outside the courtroom. Respondent's attorney instructed her to wait outside until he called her to testify and not to discuss anything that occurred inside the courtroom until the case concluded. P.H. saw Garcia exit the courtroom and walk to a nearby room where a police officer and a young man were sitting. Garcia said to them, "you are not going to believe what they are saying." Garcia then informed them that he was asked about the shovel and identified it in court. Garcia related that respondent's attorney asked him if he was in a gang and asked about the gun. Garcia said that he denied that he was in a gang and testified that he saw respondent with the gun. The officer told Garcia and the young man not to worry and said that respondent "was going away for a long time." Immediately thereafter, respondent's attorney emerged from the courtroom, and P.H. discussed the incident with him.
*1240 The State called Officer Whaley and Garcia. Whaley testified that, while Garcia testified, he and Brugger waited in a conference room near the courtroom. Whaley and Brugger discussed the events of April 11, 1999, and the initial investigation. Whaley mentioned that they would have to cease discussing the case once Garcia exited the courtroom after testifying. Garcia came to the conference room and breathed a sigh of relief. Because it appeared that Garcia was about to start discussing his testimony, Whaley instructed Garcia not to say anything. Garcia did not discuss any of his testimony. Whaley then saw respondent's attorney exit the courtroom and heard P.H. inform respondent's attorney that Garcia was discussing his testimony.
Garcia testified that, after he finished testifying during the trial, he left the courtroom and walked to the conference room where Whaley and Brugger were sitting. Garcia was about to "express [his] frustration," but Whaley immediately stopped him and explained that Garcia was not allowed to discuss the testimony. Garcia did not tell Whaley or Brugger about any of his testimony or the questions he was asked and, since the trial, has not discussed the case with them.
The trial court believed P.H. and found that Garcia violated the court's order. The hearing proceeded to the second phase, and the State called Officer Michael Kozenczak and Officer Whaley.
Kozenczak testified that, on April 11, 1999, he was dispatched to Garcia's home. In each other's presence, Garcia and Brugger told Kozenczak that they encountered a person who brandished a shovel and later a gun. Kozenczak recounted the story to Whaley, who prepared the report.
Whaley testified that he and another officer went to Garcia's home on April 12, 1999. Garcia told Whaley that a person with whom Garcia was having an altercation brandished a shovel, disappeared, and then came back with a small pistol. The person cocked the weapon and pointed it at Garcia. Also on April 12, 1999, Whaley and the other officer went to Brugger's home. Brugger also stated that a person with a shovel disappeared and came back with a gun. Whaley described the information he obtained on April 12, 1999, as much more detailed than the information he obtained from Kozenczak the previous day. Also, Whaley admitted that he included in his report a statement that he did not make an arrest at that time because of inconsistencies in the complainant's story.
On April 15, 1999, Whaley interviewed respondent at the police department. Respondent stated that he was involved in an altercation with Garcia. Because he knew Garcia to be a good fighter, respondent ran to a friend's car around the corner and retrieved a gun. Respondent unloaded the gun because he did not want to hurt anyone. He returned to the scene of the altercation, pointed the gun off to the side, and cocked it. Respondent denied pointing the gun at Garcia. Whaley showed respondent a gun that the police recovered in connection with the investigation, and respondent identified it as the gun he had on the day of the altercation. Whaley never asked respondent about a shovel. Whaley prepared, and respondent signed, a statement.
The trial court took the prejudice issue under advisement and, on April 19, 2000, denied the State's motion to reconsider. The court did not explain its findings other than to state that "the order barring the witnesses will remain in full force and effect, particularly, since the passage of time, the two witnesses * * * would have had a great opportunity to discuss their *1241 testimony." The State filed a certificate of impairment and timely appealed.
Although there is no statute or supreme court rule that mandates that witnesses be excluded from the courtroom during a trial, it is well settled that the trial court possesses the discretion to do so. Smith v. City of Chicago, 299 Ill.App.3d 1048, 1053, 234 Ill.Dec. 108, 702 N.E.2d 274 (1998). Excluding witnesses is an appropriate device to preclude a witness from shaping his testimony to conform to the testimony of those who already have testified. Skelton v. Chicago Transit Authority, 214 Ill.App.3d 554, 584, 158 Ill.Dec. 130, 573 N.E.2d 1315 (1991). If a trial court possesses the authority to exclude witnesses to prevent fabrication, it necessarily follows that the court also possesses the authority to instruct witnesses not to discuss their testimony with other witnesses. Smith, 299 Ill.App.3d at 1053, 234 Ill.Dec. 108, 702 N.E.2d 274.
A violation of a court order excluding witnesses or prohibiting witnesses from discussing their testimony does not result in the automatic exclusion of a witness's testimony. People v. Wiatr, 119 Ill.App.3d 468, 473, 75 Ill.Dec. 3, 456 N.E.2d 686 (1983). Instead, the trial court possesses the discretion to determine whether excluding a witness's testimony is appropriate, and we may not overturn that decision absent a clear abuse of discretion. People v. Trask, 167 Ill.App.3d 694, 706, 118 Ill.Dec. 529, 521 N.E.2d 1222 (1988). The dominant inquiry is whether the inclusion or exclusion of the testimony would prejudice the affected party. Wiatr, 119 Ill.App.3d at 474, 75 Ill.Dec. 3, 456 N.E.2d 686. Also, where a trial court refuses to allow a witness to testify, the affected party must demonstrate that it was deprived of material testimony without its fault. Wiatr, 119 Ill.App.3d at 474, 75 Ill.Dec. 3, 456 N.E.2d 686. The rationale underlying these rules is that the court should not punish a party by depriving it of testimony material to its case where, without the party's knowledge or fault, a witness violates a court order. People v. Johnson, 47 Ill.App.3d 362, 369, 6 Ill.Dec. 66, 362 N.E.2d 701 (1977).
The State argues that the trial court abused its discretion because the scope of the order excluding witnesses was not clear. Also, the State contends that, even if the trial court properly found that the witnesses violated the order, the sanction for the violation was inappropriate because there was no evidence that allowing the two remaining State's witnesses to testify would have prejudiced respondent.
We agree with the State that, because the scope of the trial court's order excluding witnesses was not clear, the trial court's ruling deprived an innocent party of material testimony. When a trial court determines that it is necessary to prohibit conduct that is not otherwise proscribed by statute or rule, it is imperative that the court's order be clear and that all concerned parties have an accurate understanding of its limitations. Smith, 299 Ill.App.3d at 1054, 234 Ill.Dec. 108, 702 N.E.2d 274. If the trial court's order is unclear, any sanction entered for a perceived violation is an abuse of discretion and subject to reversal. Smith, 299 Ill.App.3d at 1054, 234 Ill.Dec. 108, 702 N.E.2d 274; see also J. Corkery, Illinois Civil & Criminal Evidence § 615.101, at 868 (2000).
In Smith, the parties did not request, and the trial court did not order, that witnesses be excluded from the courtroom. Of the first five plaintiff's witnesses that testified, the trial court instructed only the first, second, and fifth witnesses not to discuss their testimony. Next, the plaintiff's expert testified. During the expert's *1242 testimony, it became apparent that the expert knew about the testimony of the third and fifth witnesses. When the trial court discovered that the plaintiff's attorney informed the expert of the substance of those witnesses' testimony, it directed a verdict for the defendants. Smith, 299 Ill.App.3d at 1050-51, 234 Ill.Dec. 108, 702 N.E.2d 274.
On appeal, the court stated:
"While it might be argued that the plaintiff's attorney should have understood that informing [the expert witness] of the substance of [the fifth witness's] testimony violated the court's admonition to that witness, the same cannot be said of his comments concerning the testimony of [the third witness.] * * * Directing a verdict in this case as a sanction for the behavior of counsel which, in significant part, violated no clear and concise order constituted an abuse of discretion and must be reversed." Smith, 299 Ill.App.3d at 1054, 234 Ill.Dec. 108, 702 N.E.2d 274.
Here, the trial court's order was less explicit than the orders in Smith. Although the court excluded the witnesses from the courtroom, it never ordered Garcia, the attorneys, or anyone else not to discuss the trial testimony. Accordingly, Garcia was not aware of the supposed prohibition at the time he had the conversation with the other two witnesses. Therefore, the trial court sanctioned the State for the conduct of a witness that violated no clear order.
Respondent argues that the State is at fault for failing to admonish and control its witnesses. This contention fails to address the lack of a clear order prohibiting the witnesses from discussing their testimony. Although such an order may be implied from the trial court's order excluding the witnesses, a drastic sanction such as barring the testimony of key witnesses should not be based on the violation of an implied order. As the events of this case reveal, that witnesses should not discuss their testimony until the conclusion of the trial is perceived as a general and established rule. The fact remains, however, that there is no codified rule prohibiting witnesses from discussing their testimony, and the trial court entered no order to that effect.
We also conclude that, even if Garcia had violated a clear order not to discuss his testimony, the trial court's sanction was unduly harsh. There is no evidence that respondent would suffer prejudice if the remaining two State witnesses were allowed to testify. Garcia told Whaley and Brugger about only three discrete aspects of his testimony: the shovel, the gun, and whether Garcia was in a gang. Both Garcia and Brugger told Officers Kozenczak and Whaley that they saw the suspect with a shovel and that the suspect disappeared and returned with a gun. Respondent's statement to Whaley corroborated the accounts of the gun. The question about gangs would have no bearing on anything about which Whaley or Brugger might testify.
In light of what Whaley and Brugger already knew about the incident and what the offer of proof revealed about Whaley's and Brugger's potential testimony, it is difficult to see how their testimony would be "affected by familiarity with" the limited aspects of Garcia's testimony. Trask, 167 Ill.App.3d at 706, 118 Ill.Dec. 529, 521 N.E.2d 1222. Garcia provided the other witnesses with essentially innocuous information that would not create an opportunity for Whaley or Brugger to shape his testimony to conform to Garcia's. See People v. Young, 187 Ill.App.3d 977, 983, 135 Ill.Dec. 418, 543 N.E.2d 986 (1989) (defendant plainly was not prejudiced by trial court's decision to allow testimony of *1243 witness who heard small portion of previous witness's testimony where witness heard previous witness testify only about incidental facts and witness plainly gave his own account of the events in question). Under these circumstances, a more appropriate remedy may have been for the trial court to allow the witnesses to testify and consider the conversation when evaluating the witnesses' credibility. See Trask, 167 Ill.App.3d at 706, 118 Ill.Dec. 529, 521 N.E.2d 1222.
Respondent points to the reference in Whaley's report to inconsistencies and asserts that "[a]n investigation already plagued with inconsistencies and ripe for proper cross examination and impeachment regarding those inconsistencies was now allowed to be synchronized by the testifying witness discussing the case with those not yet testifying." The record does not support this claim of prejudice. The testimony at the hearing revealed that all parties, including respondent, gave generally consistent accounts of the incident and that Garcia's limited discussion of his testimony would add nothing to allow the witnesses to synchronize their testimony.
The trial court made no explicit findings regarding prejudice. Instead, it commented about the opportunity the witnesses had to discuss their testimony between the trial and the hearing. We do not believe that this is an adequate basis for barring the witnesses here. Because the only testimony on the issue was Garcia's statement that, since the trial, he had not discussed the case with Whaley or Brugger, the trial court's concern about additional violations is based on mere speculation.
Because Garcia violated no clear order prohibiting him from discussing his testimony and because, even if a violation occurred, respondent would suffer no prejudice as a result, the trial court abused its discretion when it barred the testimony of the State's remaining witnesses.
Accordingly, we reverse the judgment of the circuit court of Du Page County and remand the cause for further proceedings.
Reversed and remanded.
HUTCHINSON, P.J., and GROMETER, J., concur.