(No. 32146.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EVELYN RIVERS *et al.*, Plaintiffs in Error.

*Opinion filed November 27, 1951.*

JOSEPH A. RICKER, of Chicago, for plaintiffs in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR F. MANNING, and WILLIAM J. McGAH, JR., all of Chicago, of counsel,) for the People.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

The defendants, Evelyn Rivers, age 19 years, and Helen Rivers, age 17 years, together with two other girls, Edwina Howard, age 19 years, and Wilma Howard, age 14 years, were indicted in the criminal court of Cook County on a charge of murder by shooting one Lavon Cain, a girl 17

years of age. They entered pleas of not guilty and waived trial by jury. The court found all four of the defendants guilty of murder and sentenced Edwina Howard to imprisonment for a term of fifty years and the other three defendants for terms of fourteen years. Evelyn and Helen Rivers prosecute this writ of error.

The defendants, Helen Rivers and Wilma Howard, and the deceased, Lavon Cain, were students at DuSable High School in the city of Chicago. There appeared to be some bad feelings between the Cain girl and the defendants and there was some evidence that the Cain girl and other students had chased, pushed and threatened some of the defendants at different times, on the streets and at different places near the school where the students congregated. One of these incidents occurred in the afternoon before the day of the shooting. On that same evening, the four defendants got together and discussed getting guns to frighten the Cain girl. On the morning of November 18, 1949, the Rivers sisters procured a gun and cartridges at their home and the Howard sisters did likewise. Each of the Howard girls carried one of the loaded guns and the four of them went to the corner of Fortyninth and Wabash streets near the school where the students frequently congregated. They waited on this corner until shortly after 11:30 A.M. when the school recessed for lunch. The deceased, accompanied by several other students, approached. The evidence as to exactly what occurred prior to the shooting is vague and conflicting. The defendants' evidence was to the effect that the deceased was angry, threatening, and that she pushed one of them. The evidence of the People, supplied by the testimony of the students with the deceased was that nothing was done or said, but, as they approached, the 14-year-old Howard girl pulled out her gun and fired a shot. Then both girls began firing and everybody ran, including the Rivers sisters. After the shooting, the deceased, Lavon

Cain, was found lying on her face, a bullet having entered the left side of her back and penetrated the right auricle of her heart, apparently causing instant death. One of the girls with deceased was grazed slightly by a bullet on the back of her head.

The Howard sisters were arrested on the streets just a few minutes after the shooting, still in possession of the guns, and the Rivers sisters were apprehended at their home shortly thereafter. All four of the girls were taken to the office of the assistant State's Attorney and were questioned in the presence of police officers. These questions and answers were taken down by shorthand reporters, were subsequently transcribed and each statement was signed by the girl questioned, except Edwina Howard, who refused to sign her statement.

All four defendants waived trial by jury and were tried before the court. The testimony of the People's witnesses established the facts substantially as above set forth. At the conclusion of this testimony, the State offered in evidence the four statements made by the defendants in the office of the assistant State's Attorney. At the time the statements were offered the court reserved his ruling as to the statement of Edwina Howard but stated that he was going to admit the statements of the other three defendants. None of the statements were read into the evidence at the time they were offered or at the time the court stated he was going to admit the three statements. When the State rested, counsel for the Rivers sisters stated that on behalf of his clients he wanted at that time to make a motion for the finding of not guilty. The court stated, "I will have to read the statements, I have not read them." Counsel then stated, "There has been nothing in the evidence as yet—" and replying thereto the court said: "That is right, unless there is anything in the statements, you are right. I will discharge them, if there is nothing in the statements. Read the whole statements. Read the three

statements." The statement of Helen Rivers was then read into the evidence. When the reading of this statement was concluded the court said, "We will recess until 10:30 tomorrow morning. Let me have the other two." Court was then adjourned until the following day, Wednesday, March 22, 1950, at 10:30 A.M. On the following day when the hearing was resumed the court said, "Let the record show that I have read all of the statements offered and received in evidence." The State then introduced in evidence the testimony of the reporter who had taken the statement of Edwina Howard and the testimony of the witnesses who signed that statement, which testimony was admitted by the court. At the conclusion of this testimony counsel for defendants moved that this testimony and all statements made by the defendants should be limited to the defendant making the statement and should not be considered as evidence as to any of the other defendants. This motion was allowed by the court. The defendants then presented their testimony which consisted chiefly in their denial of any intent to commit any criminal offense, and their character witnesses.

At the conclusion of all the testimony the court stated, "All right, we have completed the testimony on both sides. I want to make a statement. Without passing upon the guilt or innocence of three defendants, namely, Helen and Evelyn Rivers and Wilma Howard, I believe that under the evidence, I would like to bring the girls here into a lesser offense than murder because of the youth of Wilma and the evidence as against the two Rivers girls. While, under the law, the State's Attorney properly brought them in under a charge of murder in the indictment, in dealing with these youths, one of them a juvenile, the court would like to be able to deal with them in a lesser degree under the evidence than with the charge of murder; and I am going to ask the State's Attorney to reindict the three of

them in a conspiracy to commit murder rather than under the commission of the present indictment of actual murder. I am leaving town Saturday for a few weeks. I hope by the time I am back a new indictment is voted." The case was then continued to May 4, 1950, and again continued to May 25, 1950.

The case was resumed on May 25, 1950. The court then asked that the fathers of the defendants be sworn, and interrogated them as to where they had acquired the guns, to whom the guns belonged, and as to whether or not they had been registered. This testimony was to the effect that neither of the guns had ever been registered. The court then discussed his suggestions to counsel regarding the reduced charge of conspiracy to murder and also his suggestion regarding pleas of manslaughter by three of the defendants. The court then, before imposing sentence, made the following statements, "If there was ever a cold-blooded, premeditated killing, this is one. These four defendants met, planned and executed the murder upon their victim, as they had intended. The Howard sisters and the Rivers sisters each agreed to—and did— furnish a deadly gun and bullets. Edwina Howard fired the shots that snuffed out the life of 16 year old Lavon Cain. Each of the sisters. There were only two guns here." And further, "Murders by youngsters are on the rampage everywhere. Almost daily we read of atrocious killings by juveniles, with some new, shocking angle to the tragedy. Teen-age murderers have been pampered too often, to the point of national alarm and disgust. A bullet fired by a youth is as fatal as one fired by an adult. The courts must put an end to these vicious killings by imposing suitable punishment upon these youngsters for their crimes." And further, "Society cannot long endure such appalling conditions. It makes law enforcement extremely difficult. According to the State's Attorney, John S. Boyle, there

are over 400,000 unlicensed, and unregistered guns in Chicago, most of which are exposed to potential murderers and youngsters." And further, "No one who has legitimate reasons for owning a gun, be he a merchant or a hunter, can object to its registration. Unregistered guns are a menace to society." The court thereupon denied the motions for new trial and in arrest of judgment and imposed sentences.

As one of their grounds for reversal, plaintiffs in error contend that this record shows that the trial court heard evidence outside of open court and conducted private inquiries and investigations outside of open court and thereby acquired, and considered in his judgment, certain evidence and information acquired while the court was in recess and outside the presence of the defendants, thereby depriving them of their constitutional right to a fair and impartial trial and to be confronted by the witnesses against them. In view of our ruling on this contention, it will be unnecessary for us to consider the other assignments of error.

The law is well settled that, exclusive of certain matters of which the court may take judicial notice, the deliberations of the trial judge are limited to the exhibits offered and admitted in evidence and the record made before him in open court. Any private investigation by the court, either during the trial of the cause or while the motion for new trial is pending, constitutes a denial to the defendant of the constitutional guarantee of due process of law. (*People* v. *Cooper,* 398 Ill. 468.) The defendant in any criminal proceeding has an inherent and constitutional right that all proceedings against him shall be open and notorious, and in his presence, and any inquiry or any acquisition of information or evidence outside of open court and outside of the presence of the defendant is prejudicial error. The defendant cannot be expected to know the scope and extent of any private inquiry made by the court outside of open court and he is not required to in-

quire into such matters and to resort to extraneous proof to show that he has been prejudiced. He has a right to rely upon his constitutional guarantee that nothing shall be considered against him except the competent evidence introduced in open court, in his presence, by the witnesses who confront him.

An extended discussion of these principles or the citation of the numerous and uniform authorities is deemed unnecessary. As we said in *People* v. *Cooper*, 398 Ill. 468, at page 472, "In short, any private investigation by a court * * * constitutes a denial to the defendant of the constitutional guarantee of due process of law." The courts of this State have rigidly adhered to that rule. Defendant in error, in its brief and argument, has not cited a single case where this rule has ever been relaxed, and we have been unable to find any such case in this State.

The question here is simply, does this record show any private investigation whatsoever by the court outside the presence of the defendants. If it does, we must find prejudicial error, or we will throw open the door to such private investigations and throw the burden on defendant to show actual prejudice.

This court, on review, must rely upon the remarks of the trial judge as shown by the record. At the conclusion of the testimony of the People's witnesses, before the statements of the defendants were read, the court stated, in effect, that the evidence to convict the Rivers sisters would have to be in the statements and, if such evidence was not there, he would discharge them. Subsequently, the statement of Helen Rivers was read into the record and the statements of Evelyn Rivers and Wilma Howard were read by the court outside of open court, during a recess of the court, and out of the presence of the defendants. The two latter statements are not in the record before us.

At the conclusion of all the evidence, the court indicated he was dissatisfied with the evidence against the Rivers

sisters when he remarked that he would like to have a lesser charge against three of the defendants because of the youth of one and because of "the evidence as against the two Rivers girls." Court was then recessed and the proceedings resumed more than two months later.

When the proceedings were resumed the court, without ordering the case to be reopened for further evidence, questioned the girls' fathers in regard to whether the guns were registered. The record does not show whether defendants were given an opportunity to rebut this testimony. In his remarks made before sentencing the defendants the court then said "If there was ever a cold-blooded, premeditated killing this is one," and remarked about teen-age murders being on the rampage and stated "According to the State's Attorney, John S. Boyle, there are over 400,000 unlicensed and unregistered guns in Chicago, most of which are exposed to potential murderers and youngsters." Subsequently, in addressing defendants' counsel about arguing a motion for a new trial, the court said "I don't think you can add to what has been said to me over these weeks."

These remarks of the trial judge, both in their content and their attitude, indicate that there had been some private investigation by the court during the two months the court was in recess. It appears the court's attitude toward the guilt of the Rivers sisters changed materially during this period. His remark that "If there was ever a cold-blooded, premeditated killing this is one" is not borne out by the evidence in this case. There is not a scintilla of direct evidence of a premeditated murder in this record.

There is nothing in the record by which this court can gauge the scope and extent of any inquiry or the acquisition of evidence made by the court. The record does not show, and the court did not explain, how the information regarding the 400,000 unlicensed guns came to him. He attributed the information to the State's Attorney, John S. Boyle, but the record does not show that John S. Boyle

was ever in court in the trial of this case, and there is no evidence in the record regarding the number of unlicensed guns in the city of Chicago. Likewise, there is no evidence in the record regarding the number of teen-age murders, and the court did not explain where he had read about them. Nor did the court explain his remark to defendants' counsel that "I don't think you can add to what has been said to me over these weeks" and we have no way of knowing what was said to him, by whom, or for what purpose.

When a defendant in a criminal case waives trial by jury and submits his rights and liberty to a judge, that judge is in the identical position of the jury and all the recognized rules for the protection of the defendant's rights apply with equal force. (*People* v. *Hoffman,* 379 Ill. 318.) It is axiomatic that any unauthorized information reaching the jury is prejudicial error.

However innocently any private investigation may have been made, for whatever purpose, and regardless of its results, the defendants' constitutional right to have everything considered against them produced in open court has been violated. In the case of *People* v. *McGeoghegan,* 325 Ill. 337, the private investigation made by the court to determine the reliability of defendant's alibi witnesses was all favorable to defendant, yet this court said it was improper.

This is not a case where the guilt of the defendants is conclusively proved by the other evidence. The evidence here is close as to whether all the elements of the crime of murder have been proved beyond a reasonable doubt as to these two defendants. Where the evidence is close and the record does not show the scope and extent of an inquiry outside of open court and out of the presence of defendants, any such inquiry is presumed prejudicial.

For the reasons above stated, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*