THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FREDERICO TORRES, Defendant-Appellant.

First District (6th Division)   No. 1—88—3427

Opinion filed May 18, 1990.

---

Elliot Samuels, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Walter Hehner, and Michael G. Rogers, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RAKOWSKI delivered the opinion of the court:

Following a jury trial, defendant Frederico Torres was found guilty of possession of a controlled substance with intent to deliver and sentenced to five years in prison. He appeals.

On appeal, defendant argues that: (1) the trial court erred in denying a motion to suppress statements he made prior to *Miranda* warnings; (2) juror responses during *voir dire* unfairly prejudiced the defendant by tainting those other veniremen present who later comprised the jury; (3) the trial court erred by admitting improper rebuttal

evidence; and (4) the State failed to prove the defendant's guilt beyond a reasonable doubt. We affirm.

The facts are these. Torres was arrested on March 19, 1987, when a Chicago police officer acting pursuant to a warrant conducted a search of his home and recovered cocaine.

During the search, Torres made a statement accepting responsibility for the narcotics found. He filed a motion to suppress the statement contending that he was held in his home, not free to leave and that police interrogated him without advising him of his *Miranda* rights.

Police officer Moran, the only witness at the suppression hearing, stated that some civilians including the defendant were held in the living room during the search. None were free to leave. After Moran found narcotics, Torres made a statement. Moran then gave Torres his *Miranda* warnings in the form of questions, and Torres answered yes to each one. Afterwards, Torres asked if he could make an additional statement. On cross-examination, Moran admitted that his written report on the search and arrest did not mention the *Miranda* warnings.

At trial, as prospective jurors were examined, the judge asked 37 candidates if they had any strong feelings about drugs which would interfere with their ability to serve. Eleven responded with negative views based on personal experience with family members or friends and were excused. No record was kept as defendant had waived a court reporter during *voir dire*. Defendant moved for a mistrial on the grounds that these remarks, made in the presence of other veniremen, tainted the selected jury. The court denied the motion.

The State's first witness was police officer John Moran. He testified that on March 19, 1987, he and other officers executed a search warrant for the home of "Carmen" at 2751 N. Artesian, Chicago, Illinois. Prior to conducting the search, the officers centralized and neutralized the civilians present in the living room. This group included defendant Frederico Torres and his wife, Carmen.

Moran then searched the premises. In the pantry, he found two scales of the kind commonly used to bag cocaine, some papers which showed defendant's residence as the premises, and paint rollers containing bags of a white substance which field tested as cocaine. The officers collected these items in the dining room and told their sergeant that the warrant was "positive." According to Moran, Torres then told the police that the narcotics were his, not his wife's or anybody else's from the house.

Next, Moran testified, he looked at the front bedroom of the first floor and saw a canopy bed and a closet with girl's clothes. In the rear

bedroom, he saw a closet with clothes for an adult man and woman. He searched under the carpet and linoleum of the rear bedroom and uncovered $13,680 (or $14,680, the record is unclear) in bills ranging from hundreds to fives.

At that point, Moran was about to place Carmen Torres under arrest and had begun advising her of her *Miranda* rights. He testified that Frederico Torres once again stated that the drugs were his, not his wife's, and he would take responsibility.

According to Moran's partner, Bill Szeczepaniak, Moran then read the *Miranda* rights to defendant Torres and asked him if he understood. Torres said he did and, for a third time, told Moran that the drugs and money in the house were his.

Then Moran placed Torres under arrest. Moran stated he did not arrest Mrs. Torres since Mr. Torres had admitted responsibility, and the police did not want to arrest both parents while small children were left in the home.

At the end of the State's case, the parties stipulated that the substance found in the Torres pantry was 12.5 grams of cocaine.

Defendant Torres testified that he lived at the Artesian address with his wife, five children, and two other adults. He denied having ever seen cocaine in the home. He claimed he had not entered the pantry for two years and did not sleep in the downstairs bedroom where the money was found. At one point, he admitted seeing the small scale in someone else's possession but later he denied having ever seen it.

Torres testified further that he spoke to the police when they were going to arrest his wife, saying:

"I'm the man of the house, I control the house.

* * *

I told officers I cannot let [them] arrest my wife because I'm supposed to be responsible in the house and if they [are] going to arrest somebody to take me in."

Torres also testified that he had no knowledge of where large sums of money were hidden in the house. He explained that he had sold a building and given $8,500 in cash to his wife. He also gave her $10, $20, and $50 bills from his weekly paychecks. He stated that the money had been found in his daughter's bedroom.

The State then recalled Officer Moran as a rebuttal witness. Moran testified that five of the bills recovered from the Torres home were marked bills which had been used in police drug transactions on December 9 and December 19, 1986. On both occasions, an undercover officer drove near defendant's home and sent a buyer in for drugs. On both occasions, the buyer returned to the police with the drugs, re-

ceived the marked money, and rode away in the car with the undercover officer. Five of the bills recovered from the Torres home matched the serial numbers in police records of cash used in these two drug buys.

## I

Torres first asserts that the trial court erred in denying his motion to suppress statements made during the police search of his home.

■ Rulings on suppression motions are based primarily on factual determinations and will not be reversed on appeal unless manifestly erroneous or against the manifest weight of the evidence. (*People v. Mallett* (1970), 45 Ill. 2d 388, 395-96, 259 N.E.2d 241, 245.) Questions concerning credibility which must be resolved to determine a suppression motion are for the trier of fact. *People v. Davis* (1983), 97 Ill. 2d 1, 20, 452 N.E.2d 525, 534.

■ In *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the Supreme Court set forth rules of procedure applicable to interrogations in custodial settings. These rules apply whenever there is "questioning *** by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 16 L. Ed. 2d at 706, 86 S. Ct. at 1612.

Defendant argues that once contraband was discovered *Miranda* warnings should have been given and that any statement made prior to the warnings should be suppressed. He reasons that he was in a custodial setting, held in the living room while police searched his home. We disagree. Torres had simply been detained during a proper search of his home. *Michigan v. Summers* (1981), 452 U.S. 692, 694, 69 L. Ed. 2d 340, 344, 101 S. Ct. 2587, 2590.

Nonetheless, assuming *arguendo* that a custodial situation did exist, *Miranda* protections are not triggered unless there is also "questioning by law enforcement officers." The important issue is not whether an individual in custody can talk to the police without counsel but whether he can be interrogated. (*Miranda*, 384 U.S. at 478, 16 L. Ed. 2d at 726, 86 S. Ct. at 1630.) Even for defendants in custody "[v]olunteered statements of any kind are not barred by the Fifth Amendment." *Miranda*, 384 U.S. at 478, 16 L. Ed. 2d at 726, 86 S. Ct. at 1630; see also *People v. Shelton* (1969), 42 Ill. 2d 490, 492, 248 N.E.2d 65, 67; *People v. Hill* (1968), 39 Ill. 2d 125, 130-31, 233 N.E.2d 367, 371.

Defendant cites three cases for the proposition that the State may not use statements elicited by the police in the absence of *Miranda*

warnings. (*People v. Hentz* (1979), 75 Ill. App. 3d 526, 530-31, 394 N.E.2d 586, 589; *People v. Szerletich* (1980), 86 Ill. App. 3d 1121, 1129, 408 N.E.2d 1098, 1103; *People v. Roundtree* (1985), 135 Ill. App. 3d 1075, 1080, 482 N.E.2d 693, 697.) Torres also cites *People v. Levendoski* (1981), 100 Ill. App. 3d 755, 759, 426 N.E.2d 1241, 1243, for the proposition that even if the police have not asked direct questions, they must give *Miranda* warnings before using words or actions "reasonably likely to elicit an incriminating response from the suspect."

These cases do not apply to statements which are volunteered by defendants. In *Hentz, Szerletich,* and *Roundtree,* police directly questioned the defendant. In *Levendoski,* a defendant already in custody for one offense was brought to speak to the sheriff about another.

In this case, Torres made two unelicited statements. At the time of the first statement, police had just told the sergeant they had a "positive" warrant. At the time of the second statement, police were talking to Torres' wife. It is likely, as Torres argues, that he had a natural interest in protecting his home and wife. However, the protection of *Miranda* does not exclude statements simply because of the defendant's motives in making them.

Furthermore, Torres also made a third statement after police had read him his *Miranda* rights. Officer Moran testified to this at the suppression hearing and at trial. Such statements are properly admitted even if the defendant had previously given inadmissible statements. *Oregon v. Elstad* (1985), 470 U.S. 298, 314, 84 L. Ed. 2d 222, 235, 105 S. Ct. 1285, 1296.

■ In sum, of the three statements which Torres would now like to suppress, two were made gratuitously by defendant and one was made after proper *Miranda* warnings. Therefore, we find that the trial court's decision was not manifestly erroneous or against the manifest weight of the evidence when it denied defendant's motion to suppress.

## II

Next Torres contends that the trial court erred in denying defendant's motion for mistrial on the grounds that negative comments about drugs made by some veniremen during *voir dire* tainted the disposition of other veniremen who eventually made up the jury.

After *voir dire* defendant moved for a mistrial. The court denied the motion because the inquiry about juror experience with drugs had been made for the benefit of defendant.

Torres argues the general proposition that nothing should be considered against a defendant except competent evidence. He relies on *People v. Rivers* (1951), 410 Ill. 410, 416-19, 102 N.E.2d 303, 306-07.

It should first be noted that defendant does not cite any authority for the proposition that answers given by excluded veniremen during *voir dire* are items that improperly influence a jury. *People v. Rivers* is not on point.

■ Second, the defendant had waived a court reporter during *voir dire* and, consequently, did not preserve the record which an appellant must have to challenge jury selection on appeal. (*People v. McCoy* (1987), 156 Ill. App. 3d 194, 198-99, 509 N.E.2d 567, 569-70.) Since appeals involving the propriety of *voir dire* are factual in nature, it is impossible to review them without a record. (*People v. Prante* (1986), 147 Ill. App. 3d 1039, 1063, 498 N.E.2d 889, 905.) Furthermore, the responsibility for preserving this record rests on the appellant. *People v. Edwards* (1978), 74 Ill. 2d 1, 6, 383 N.E.2d 944, 947.

■ In this case, no record was kept during jury selection. There is not any evidence that the trial court was unfair in its selection procedure. Therefore we find that the trial court did not err in denying defendant's motion for mistrial.

### III

Third, Torres claims that the trial court erred by allowing rebuttal evidence that was improperly admitted and unduly prejudicial.

■ Proper rebuttal evidence answers or contradicts affirmative matters raised by the defense in its case in chief. (*People v. Harvey* (1980), 92 Ill. App. 3d 465, 470, 415 N.E.2d 1161, 1165.) Where the defendant's defense rests on his own credibility, rebuttal evidence that is offered or impeachment must rebut the defendant's testimony. (*People v. Sepka* (1977), 51 Ill. App. 3d 244, 261, 367 N.E.2d 138, 151.) What constitutes proper rebuttal evidence is a matter of discretion for the trial court and ordinarily will not be set aside on review. (*People v. Waller* (1977), 67 Ill. 2d 381, 387, 367 N.E.2d 1283, 1286.) Furthermore, the determination of whether the prejudicial impact of evidence outweighs its probative value is "a matter within the sound discretion of the trial court." *People v. Rader* (1988), 178 Ill. App. 3d 453, 464, 532 N.E.2d 1365, 1371.

In this case, Torres contends that rebuttal evidence was both improper and unduly prejudicial. Officer Moran testified that five of the bills found in the Torres home were marked bills from police drug buys. Torres claims that this evidence did not contradict any of his testimony. During his case in chief, he had admitted giving his wife money from a building sale and from his weekly paychecks, but he denied knowing whether the money found in the rear bedroom was that money.

Torres relies on *Sepka* (51 Ill. App. 3d at 260-61, 367 N.E.2d at 150-51). We disagree. In *Sepka*, police officer defendants testified they believed that a woman named Carol was also known to them as a prostitute named Ann Bloomgardner. The rebuttal witness testified that no one named Ann Bloomgardner had ever been arrested for prostitution. The court held that the rebuttal evidence spoke to whether or not anyone named Ann Bloomgardner had ever been arrested for prostitution while the officers had only testified that they believed the woman named Carol was a prostitute named Ann Bloomgardner. In short, the evidence offered in rebuttal about the arrest record did not in fact rebut anything offered by the defendants about their belief.

The State counters that Torres did admit he knew money was hidden in the house and clearly implied that it came from legitimate sources. He admitted giving his wife $8,500 in cash from a building sale and $10, $20, and $50 bills from his weekly paychecks. He stated that she had hidden this cash, but he did not know where. This testimony, the State claims, implied that the money in the house came from legitimate sources.

■ While it is true that Torres' testimony did not directly state that all of the money recovered had come from legitimate sources, it certainly can be argued that such an inference did flow from defendant's testimony regarding the sources of the cash. Defendant was charged with possession of a controlled substance with the intent to deliver. No one would deny that $14,000 in cash found in a bedroom under the carpet is damaging evidence indeed. Torres did not object to the introduction of this money into evidence. Rather, he created an inference that some or all of the money was from a source other than drug trafficking. Under these circumstances, we believe the State had the right to attempt to dispel that inference.

Officer Moran's testimony about the marked bills did contradict Torres' implication that some or all money in the house came from legitimate sources. Moran's testimony did not prove that Torres himself had conducted the drug deals with the marked money. But the weight of the evidence is a question for the jury, not a reason for exclusion. Moreover, we find the trial court's decision that the probative value of this evidence outweighed its prejudicial impact was not an abuse of discretion and, therefore, not error.

IV

Defendant's fourth issue is that the State failed to prove beyond a reasonable doubt that Torres was guilty of possession of a controlled substance with the intent to deliver.

■ To prove a defendant guilty of possession, the State must prove that the defendant knew of the presence of the substance and that the substance was in his immediate and exclusive control. (*People v. Trask* (1988), 167 Ill. App. 3d 694, 707, 521 N.E.2d 1222, 1231, citing *People v. Nettles* (1961), 23 Ill. 2d 306, 307, 178 N.E.2d 361, 362.) When the State proves that a controlled substance was "found on premises under the control of a defendant, this fact *** gives rise to an inference of knowledge and possession by defendant which may be sufficient to sustain a conviction for unlawful possession." *Trask*, 167 Ill. App. 3d at 707, 521 N.E.2d at 1231.

■ On review, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 461, 472, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573-74, 99 S. Ct. 2781, 2788-89.

Defendant contends that the most telling pieces of evidence against him are the self-incriminating statements and rebuttal testimony which he tried to exclude. Further, he argues, even with this testimony, the State has not proved his guilt beyond a reasonable doubt.

■ The police search of defendant's home yielded 12.5 grams of cocaine, two scales for weighing drugs, and roughly $14,000 in cash including the marked bills. Papers found in the home indicated that defendant lived there. He had easy access to the places where drugs, scales, and cash were found. He even told the police that the drugs were his.

In sum, viewed in the light most favorable to the prosecution, the evidence here would allow a rational trier of fact to find defendant guilty.

For these reasons, we affirm the judgment of the circuit court of Cook County. As part of our judgment, we grant the State's request and assess defendant $50 as costs for this appeal and $25 as costs for the oral argument.

Judgment affirmed.

McNAMARA and EGAN, JJ., concur.