602 A.2d 350

**COMMONWEALTH of Pennsylvania**

v.

**Joseph WILLIAMS, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 14, 1991.

Filed Jan. 22, 1992.

588

Joel I. Fishbein, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before ROWLEY, President Judge, and BECK and HESTER, JJ.

ROWLEY, President Judge:

Appellant Joseph Williams was convicted of possession with intent to deliver a controlled substance, possession of drug paraphernalia, and criminal conspiracy.[1] He was sen-

---

1. 35 Pa.S. § 780–113(a)(30), (32); 18 Pa.C.S. § 903.

tenced to three to eight years imprisonment for possession with intent to deliver, with concurrent terms of six to twenty-four months imprisonment for possessing drug paraphernalia and five years probation for conspiracy. In this appeal appellant raises issues of suppression, sufficiency and weight of the evidence, and ineffective assistance of counsel. After considering all of appellant's arguments, we affirm the judgment of sentence.

In October 1989, pursuant to citizen complaints that drugs were being sold from a house at 3966 Poplar Street, Philadelphia, Officer Rone made a controlled buy of two vials of cocaine. Rone approached the house and told the woman sitting on the porch that he needed "two" and handed her a pre-recorded ten-dollar bill. The woman tapped the porchboards and said "two." A floorboard moved and a male's hand stuck out two vials of cocaine. As Rone walked away from the house, an unidentified male passed him and said "Hello Officer" or words to that effect. Rone rushed around the corner and told his field superior of the identification. The field superior decided to move on the house immediately. The officers rushed to the house and entered the premises. They gathered all the individuals in the house into the living room and then proceeded to search the house. They found drug paraphernalia in the basement. Upstairs in the bedroom they found cocaine, vials, and currency which included the pre-recorded $10.00 bill. Finding evidence that the house belonged to Sharon Thompson, the officers questioned the women in the living room to find out which one was Ms. Thompson. When they found her, they began to place her under arrest. At that time, appellant stated "Don't lock her up. She doesn't know anything about it. They are my drugs." N.T. 11/16/90, 120. The police officers then arrested appellant.

## I. SUPPRESSION

Appellant offers two distinct suppression issues. The first derives from the Fourth Amendment's protection against unreasonable searches while the second derives

from the Fifth Amendment's protection against compulsory self-incrimination. After hearing the evidence, the suppression court denied the motions to suppress. We will now examine each of these issues in turn.

The scope of review of the denial of a motion for suppression of evidence is firmly established. The suppression court must make findings of fact and conclusions of law in determining whether evidence was obtained in violation of the defendant's rights. The burden of proving the admissibility of the evidence lies on the Commonwealth's shoulders; the standard by which the court determines the legitimacy of the search and seizure, and hence the admissibility of the evidence whose suppression has been moved, is that of the preponderance of the evidence. Pa.R.Crim.P. 232(h). On appeal we must determine whether the record supports the factual findings of the suppression court, as well as determine the reasonability of any inferences and legal conclusions drawn from the court's findings of fact. *Commonwealth v. Goodwin*, 460 Pa. 516, 522, 333 A.2d 892, 895 (1975); *Commonwealth v. Bundy*, 458 Pa. 240, 328 A.2d 517 (1974); *Commonwealth v. Sharpe*, 449 Pa. 35, 296 A.2d 519 (1972); *and see Commonwealth v. Burgwin*, 254 Pa.Super. 417, 386 A.2d 19 (1978) (Opinion in Support of Reversal, per Price, J.).

*Commonwealth v. Eliff*, 300 Pa.Super. 423, 428, 446 A.2d 927, 929 (1982).

## A. *Fourth Amendment*

Appellant argues that the police violated his Fourth Amendment rights when they entered the house at 3966 Poplar Street without a warrant and without exigent circumstances. The Commonwealth concedes the absence of a warrant but disputes the alleged absence of exigent circumstances. There was testimony, which was believed by the trial court, that an unidentified male said "Hello, Officer" or words to that effect when Officer Rone passed him on the sidewalk, about three to five feet from the house. At

this point, the Commonwealth suggests, Rone obviously had good reason to believe his cover was blown and that the prerecorded buy money, drugs, and accomplices within the house might soon disappear. Rone then proceeded to tell his field superior, who made a quick decision to "take the house" immediately.

Appellant argues that the above-mentioned facts are insufficient to show exigent circumstances. Appellant points out that there is no evidence that anyone in the house overheard the greeting. This is of no moment since the unidentified greeter could simply have repeated his observation at the house. By no means should we confine the showing of the exigent circumstances to the discrete event of the greeting; instead the problem was created when a person with apparent ability to blow Rone's cover approached the house. It could logically be inferred, not that the initial greeting was heard, but that the observation would be repeated.

■ Appellant questions whether the identification of Officer Rone as a police officer was ever made in the first place. Appellant warns that by allowing police officers to skirt the warrant requirement by fabricating exigent circumstances, we would allow the exigent circumstance exception to swallow the rule requiring warrants. We are aware of the dangers posed by exceptions to constitutional principles. We are also cognizant of the dangers of fabrication. *Commonwealth v. Daniels*, 280 Pa.Super. 278, 286, 421 A.2d 721, 725 (1980). Nevertheless, appellant's argument goes to credibility.

When reviewing a suppression claim, we are bound by the facts found in the record and in determining the matter, we consider only the evidence of the prosecution's witnesses and may reverse the suppression court only if the legal conclusions drawn from those facts are in error. *Commonwealth v. Cauto*, 369 Pa.Super. 381, 535 A.2d 602 (1987). *Also see Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264 (1989).

*Commonwealth v. Markovitch,* 388 Pa.Super. 244, 249, 565 A.2d 468, 470 (1989).

The suppression court was permitted to believe all, part, or none of a witness' testimony. *Id.* 388 Pa.Superior Ct. at 250, 565 A.2d at 471. It was free to disbelieve appellant's testimony and to believe the officer's testimony, and it did. If the officer's cover had truly been blown, the suspects and the evidence could well have disappeared before the officers would have had time to get a search warrant. As will be discussed below, potential loss of evidence constitutes exigent circumstances, as does the potential flight of a suspect.

Appellant next argues that the factors set out in *Commonwealth v. Williams,* 483 Pa. 293, 396 A.2d 1177 (1979), *cert. denied,* 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980), were not met in this case. In *Williams,* the Pennsylvania Supreme Court examined the question of whether exigent circumstances excused a warrantless search of the defendant's house. The court borrowed elements from *Dorman v. United States,* 140 U.S.App.D.C. 313, 320, 435 F.2d 385, 392–393 (1970), to help define when exigent circumstances exist. Those elements included: 1) a grave offense; 2) reasonable belief that the suspect is armed; 3) clear showing of probable cause to believe that the suspect committed the crime involved; 4) strong reason to believe the suspect is on the premises; 5) likelihood that the suspect will escape if not immediately apprehended; and 6) peaceful entry.[2] *Williams, supra,* 483 Pa. at 298, 299, 396 A.2d at 1179, 1180. However, the paragraph introducing the elements is key, and has occasionally been forgotten, as appellant appears to have done in this case:

> Terms like "exigent circumstances" or "urgent need" are useful in underscoring the heavy burden on the police to show that there was a need that could not brook the delay incident to obtaining a warrant, and that it is only in the

---

**2.** Another factor the Court in *Williams* addressed was whether the entry was made in the daytime. However, the Court noted that this consideration could cut either way in a given case. Some later courts have added daytime entry as a seventh factor while others have maintained only six factors.

light of those circumstances and that need that the warrantless search meets the ultimate test of avoiding condemnation under the Fourth Amendment as "unreasonable". While the numerous and varied street fact situations do not permit a comprehensive catalog of the cases covered by these terms, it may be useful to refer to a number of considerations that are material, and have particular pertinence in the case at bar.

*Williams, supra,* 483 Pa. at 298, 396 A.2d at 1179, citing *Dorman, supra* (emphasis added).

Various other courts in Pennsylvania have applied the factors set forth in *Williams.* Some of these courts have appeared to apply them in a checklist or a "litmus test" fashion. Others have refused to do so. We conclude that the latter approach follows the spirit of the Supreme Court's guidance in *Williams.*

Essentially, the exigent circumstances exception involves balancing the needs of law enforcement against individual liberties and/or rights. Some factors will outweigh others in a given case. Justice Brennan in *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), emphasized the primacy of the gravity of the offense. In *Welsh,* Wisconsin's grading of a traffic offense was the keystone in the majority's determination that there were no exigent circumstances excusing the lack of a warrant.

In other cases, the need to protect evidence was found to be key. Exigent circumstances exist when the inevitable delay involved in getting a warrant must give way to an urgent need for immediate action. *Commonwealth v. Conn,* 377 Pa.Super. 442, 547 A.2d 768 (1988). The exigent circumstance exception applies when evidence will be destroyed or when the safety of officers or other individuals is at stake. *Id.* There can be no inflexible standard; instead the "reasonableness of searches and seizures must necessarily be determined on a case-by-case basis." *Commonwealth v. Eliff,* 300 Pa.Super. 423, 438–439, 446 A.2d 927, 935 (1982).

The first Supreme Court case to examine the factors of *Williams* substantively was *Commonwealth v. Wagner*, 486 Pa. 548, 406 A.2d 1026 (1979). There the Court listed the "seven" *Williams* factors and stated, "These factors are to be balanced against one another in determining whether the warrantless intrusion was justified." *Id.*, 486 Pa. at 557, 406 A.2d at 1031. The Court then examined factors for and factors against exigent circumstances in that case. In concluding that no exigent circumstances existed, the Court once again noted a priority within the factors when it stated, "Even more importantly, there was little need of swift apprehension." *Id.*, 486 Pa. at 558, 406 A.2d at 1031.

This Court also recognized the primary role that the need of swift apprehension can play in *Commonwealth v. Hartford*, 313 Pa.Super. 213, 459 A.2d 815 (1983), where no exigent circumstances were found even though four *Williams* factors were met, but there was no need for swift apprehension. This Court noted in *Commonwealth v. Santana*, 329 Pa.Super. 427, 478 A.2d 863 (1984), that the relevant factors are to be balanced. In *Commonwealth v. Monarch*, 330 Pa.Super. 165, 479 A.2d 491 (1984), *reversed on other grounds*, 510 Pa. 138, 507 A.2d 74 (1986), this Court upheld a warrantless search when a drunk driver left the scene of an accident and went home. The court noted that several factors "coalesced to create the exigent circumstances" and also that "some factors will outweigh others in balancing the scale." *Id.*, 330 Pa.Superior Ct. at 177, 178 n. 3, 479 A.2d at 497 n. 3. In *Commonwealth v. DeShields*, 335 Pa.Super. 89, 96, 483 A.2d 969, 972 (1984), this Court explicitly stated that one of the *Williams* factors was not relevant to that case.

A case-by-case determination cannot be avoided. Appellant's lockstep approach to *Williams* must be rejected. We remind appellant, and state clearly for the record, that the very nature of exigent circumstances makes them unsusceptible to checklists. Even if we were to hold that appellant is correct in arguing that some of the elements listed in *Williams* have not been met, this would not be the

same as saying that appellant is correct in arguing that there are no exigent circumstances.

After listing six *Williams* factors, Judge Sheppard found that three were easily met (grave offense, probable cause to believe crime was committed at the subject premises, strong reason to believe suspect was on premises). *See* Trial Court Opinion at 14. He then analyzed the remaining three factors. He found that there was a need for swift apprehension due to the unidentified male's identification of Rone. He also found that the entry onto the premises was peaceable. Both these issues were hotly contested, but their resolution was a matter of credibility. Concerning the final factor, Judge Sheppard wrote, "Admittedly, there was no evidence presented to suggest that the suspects were believed to be armed. On the other hand, experience in carrying out drug arrests in this country has demonstrated that in many instances weapons are found in the premises." *Id.* at 15. Judge Sheppard determined that "on balance" the requisite *Williams* factors were met. *Id.* We agree.

Appellant's final argument connected with the Fourth Amendment is that the police should have waited for a warrant after securing the premises. Appellant cites *Commonwealth v. Ellsworth*, 421 Pa. 169, 218 A.2d 249 (1966), in which the Court stated that the police should have acquired a warrant before proceeding with a search of defendant's hotel room. Two major distinctions from the case at bar can be noted. First, in *Ellsworth*, the search was not commenced until two hours after the defendant was arrested. Second, and most important in this Court's view, the search was not geographically proximate to the arrest. In the case at bar, the search was made contemporaneous to a valid arrest. The arrest was made in a house and only that house was searched. The possibility that other suspects might be hiding in the house and/or that evidence might be destroyed justified the police search of the entire house. Appellant's argument that the officers should have waited for a search warrant is ungrounded in

the realities of a fast-moving narcotics bust in a crack house.

Given our disposition of appellant's arguments and our deference to the fact-finding capacity of the suppression court, we agree with the suppression court that exigent circumstances existed which excused the normal requirement for a search warrant before entering a private residence.

### B. *Fifth Amendment*

Appellant's next suppression issue derives from the Fifth Amendment and concerns the admission into evidence of his statement to the police that the drugs were his. Appellant argues that he did this merely because he wanted to prevent his paramour, who was 8½ months pregnant, from being arrested. He implies that the police placed him under psychological pressure to confess to a crime he did not commit. Although there are no cases in Pennsylvania presenting these same facts, this case is remarkably similar to *People v. Torres*, 198 Ill.App.3d 1066, 145 Ill.Dec. 123, 556 N.E.2d 741 (1990). In *Torres*, the police searched defendant's house pursuant to a search warrant and recovered cocaine. When the police placed defendant's wife under arrest, defendant began to confess in an attempt to exculpate his wife. Defendant stated, "I'm the man of the house, I control the house." At trial, defendant explained, "I told officers I cannot let arrest [sic] my wife because I'm supposed to be responsible in the house and if they going to arrest somebody to take me in." *Id.* 145 Ill.Dec. at 125, 556 N.E.2d at 743. The court reasoned that the "protection of *Miranda* does not exclude statements simply because of the defendant's motives in making them." *Id.* 145 Ill.Dec. at 127, 556 N.E. at 745. The court pointed out that *Miranda* requires custodial interrogation. Since there was no interrogation in *Torres*, there was no *Miranda* violation.

We find *Torres* persuasive in this case. Appellant argues that he made his statement out of chivalry, merely to prevent his paramour from being arrested. As admirable as such a motive might be, it does not provide relief to

appellant. There was no *Miranda* violation since *Miranda* requires a custodial interrogation, and there was no interrogation here. The police were acting entirely within their scope of authority. When they found drugs and drug paraphernalia in the house, they logically suspected the owner of the house. When the bedroom search turned up Sharon Thompson's identification and the address on it matched the residence, they asked the assembly of people in the living room for their names. When Sharon Thompson identified herself, they proceeded to place her under arrest. This very well may have had the unintended consequence of placing psychological pressure on appellant. However, at the time of this occurrence, there was no interrogation going on, least of all of appellant. His statement was purely spontaneous. Whatever his motivations may have been, they cannot be charged against the police. Therefore, we conclude that the trial court correctly admitted the statement against appellant.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant states in his brief that "apart from [his] inadmissible statement" there is not sufficient evidence to convict him of possession with intent to deliver. Appellant's brief at 15. He also asserts that the conviction for conspiracy must fail for the same reason. *Id.* at 17. Appellant misperceives the extent of our review. When the sufficiency of the evidence is challenged, all of the evidence admitted at trial is considered. "We may not grant a motion in arrest of judgment on a diminished record...." *Commonwealth v. Maybee,* 429 Pa. 222, 226, 239 A.2d 332, 335 (1968). *Accord Commonwealth v. Baker,* 466 Pa. 479, 483, 353 A.2d 454, 456 (1976). Instead, in reviewing a motion in arrest of judgment, "the sufficiency of the evidence must be evaluated upon the *entire trial record....* [A]ll evidence actually received must be considered, whether the trial rulings thereon were right or wrong." *Commonwealth v. Tabb,* 417 Pa. 13, 16, 207 A.2d 884, 886 (1965), quoted in *Commonwealth v. Hazlett,* 429 Pa. 476, 478, 240

A.2d 555, 556 (1968), and *Commonwealth v. Maldonado*, 343 Pa.Super. 154, 158, 494 A.2d 402, 404 (1985) (citations omitted; emphasis in original).

■ In any event, we have concluded that the statement in question was properly admitted. We also note that appellant's confession was bolstered by corroborating evidence that indicated his joint possession and control of the house. Such evidence included appellant's IRS W–4 form for tax withholding, the fact that appellant gave 3966 Poplar Street as his address to the police after his arrest, the presence of his clothes in the bedroom, and the logical inferences drawn from the fact that Ms. Thompson is the mother of three of his children.

## III. WEIGHT OF THE EVIDENCE

"The grant of a new trial on the ground that the verdict is against the weight of the evidence is generally committed to the sound discretion of the trial court." *Commonwealth v. Larew*, 289 Pa.Super. 34, 37, 432 A.2d 1037, 1038 (1981). In reviewing the evidence we must look at all the evidence. *Commonwealth v. Gonce*, 320 Pa.Super. 19, 26 n. 1, 466 A.2d 1039, 1043 n. 1 (1983). To warrant a new trial, "it must appear from the record that the jury's verdict was so contrary to the evidence as to shock one's sense of justice and to make the award of a new trial imperative, so that right may be given another opportunity to prevail." *Commonwealth v. Barnhart*, 290 Pa.Super. 182, 185, 434 A.2d 191, 192 (1981).

*Commonwealth v. Sullivan*, 372 Pa.Super. 88, 90, 538 A.2d 1363, 1365 (1988).

■ The evidence presented at trial represented two widely contrasting perspectives on the events in question. The many conflicts between the two stories were resolved by the jury in favor of the Commonwealth's version of events. The result reached by the jury does not shock the conscience of this Court; in fact, the verdict is adequately supported by competent evidence. We conclude that the

trial court did not abuse its discretion when it refused to grant a new trial due to the weight of the evidence.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

As a general rule, ineffectiveness of prior counsel must be raised as an issue at the earliest stage in the proceedings at which counsel whose effectiveness is being challenged no longer represents the defendant. *Commonwealth v. Hubbard*, 472 Pa. 259, 276 n. 6, 372 A.2d 687, 695 n. 6 (1977).

\* \* \* \* \* \*

The initial inquiry which we make is whether appellant's claims are of arguable merit. *Commonwealth v. Parker*, 503 Pa. 336, 341, 469 A.2d 582, 584 (1983); *Commonwealth v. Kenney*, 317 Pa.Super. 175, 182, 463 A.2d 1142, 1145 (1983) (quoting *Commonwealth v. Kaufman*, 307 Pa.Super. 63, 73, 452 A.2d 1039, 1044 (1982)). Only if the underlying claim is of arguable merit must we inquire whether the strategy chosen by counsel had some reasonable basis designed to effectuate the interest of his client. *Commonwealth v. Hubbard*, 472 Pa. 259 at 278, 372 A.2d 687 at 696 (1977). The burden of establishing counsel's ineffectiveness lies with the petitioner. *Commonwealth v. McNeil*, [506 Pa. 607, 487 A.2d 802] *supra; Commonwealth v. Kenney, supra.*

*Commonwealth v. Johnson*, 347 Pa.Super. 93, 500 A.2d 173, 174–75 (1985).

 Appellant was represented at trial by Victor Snyder. At the conclusion of the trial, Snyder withdrew and Joel Fishbein ("appellate counsel") was appointed. On January 22, 1991, appellate counsel appeared at a hearing on appellant's post-trial motions and raised, *inter alia*, the issue of ineffective assistance of counsel due to counsel's failure to place into evidence certain photographs which, it is claimed, would have proven the violent entry of the police into 3966 Poplar Street or would at least have impugned the credibility of the police officers. It is further alleged that

counsel was ineffective for failing to provide a necessary witness.[3]

At trial, Sharon Thompson claimed that the police had broken into her home with violence and had broken pipes in the basement and damaged her front door. This testimony was challenged on cross-examination and the following significant exchange occurred:

Q: Do you have any pictures of that lock that was broken?

A: No, I•don't.

\* \* \* \* \* \*

Q. ... and you have pictures of those pipes that were broken?

A. No, I don't.

N.T. 11/20/90, 19, 25.

Ms. Thompson explained the total lack of proof by saying that the damage had been repaired before trial (N.T. 11/20/90/ 4–6, 17–19, 24–25). Trial counsel cannot be ineffective for failing to place into evidence photographs which, according to sworn testimony, do not exist. Furthermore, appellant's failure to establish that the photographs exist is sufficient grounds to deny his claim. *See e.g. Commonwealth v. Johnson*, 479 Pa. 60, 62, 387 A.2d 834, 834–35 (1978) (failure to provide investigatory report or even prove it existed).

In addition, we conclude, pursuant to our analysis of *Williams* in Section I.A., that even if appellant were able to prove that the photographs existed at the time of trial, that trial counsel knew of their existence, and that those photographs proved everything appellant claims they would have proved, the facts of the case before us would still

---

3. Appellant raises this issue in his brief in the "Summary of Argument" section. This contention was not argued in the "Argument" section of the brief, nor was it stated or implied in the Statement of Questions Involved. Nevertheless, it was orally addressed on motion for post-trial relief and was discussed by Judge Sheppard in his opinion. Although the brief has not met the dictates of Pa.R.A.P. 2116(a), we will not consider the issue waived, but will address it on the merits.

support the application of the exigent circumstances exception to the warrant requirement. Appellant has failed to prove that he was prejudiced by the alleged ineffectiveness of counsel. Therefore, there is no merit to the claim.

Appellant argues that trial counsel was ineffective for failing to produce Pam Scott, the woman sitting on the porch from whom the drugs were actually purchased, as a witness. However, at the time of the trial, Pam Scott was under bench warrant status. N.T. 11/16/90, 114–116. It is absurd to require defense counsel to produce as a witness someone who is currently a fugitive from justice. Her absence from this case was not the result of defense counsel's ineffectiveness, but was the direct result of her own illegal act. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.